JULIA K. LEONARD, RESPONDENT, v. MORTON PENNY-
PACKER ET AL., APPELLANTS.

Submitted July 7, 1913—Decided December 8, 1913.

Whether a contract in writing, which provided for the delivery of
    newspapers for a certain period, at a certain price, which in-
    cidentally gave to the subscriber the right to vote for the most
    popular baby in an annual baby parade, was in fact a *bona fide*
    contract of subscription for the newspaper or was void as a
    gaming contract, presented a question of fact. *Held,* therefore,
    that a nonsuit under such circumstances was properly refused.

On appeal from the Supreme Court, Monmouth Circuit.

For the plaintiff, *Wilbur A. Heisley.*

For the defendants, *Thomas P. Fay.*

The opinion of the court was delivered by

MINTURN, J. The declaration in this case alleged a con-
tract between plaintiff and defendants, the latter being own-
ers and publishers of the "Asbury Park Journal," the legal
effect of which was that in consideration of the payment to
defendants of $750 they would supply their journal to the
plaintiff, to the number of one hundred and fifty copies, for
one year.

The breach alleged was the failure of the defendants to
supply the papers. The defendants interposed the plea of
general issue, and upon the trial it was disclosed that in
August, 1910, the defendants offered a prize of an automobile
to the baby receiving the highest number of votes in the an-
nual baby parade at Asbury Park. They agreed that upon
the payment of $5 the subscriber should receive a voting
coupon for five hundred votes, and an order for the "Journal"
for one year.

The plaintiff's husband obtained for her one hundred and
fifty annual subscriptions for the "Journal," and paid $750

for the same to the bank at Asbury Park, which represented the defendants in the transaction, receiving in return this receipt: "When officially stamped paid at either the Asbury Park and Ocean Grove Bank or the Seacoast National Bank, this is a receipt for one year's subscription to the 'Asbury Park Journal' to be mailed daily for one year from . . . . . . . .

"Name, Buena Vista Hotel,

"Address, Belmar, N. J."

This was supplemented by an order as follows: "Please send the 'Journal' daily from . . . . . . . . . . to . . . . . . . . . .

"Name, Buena Vista Hotel,

"Address, Belmar, N. J.

"Paid for by J. K. Leonard."

At the same time there was delivered to plaintiff, through her husband, one hundred and fifty voting coupons for use in the baby contest, and which plaintiff's husband voted in favor of his child, who proved not to be the successful candidate.

These facts were not substantially controverted, and the trial court left it to the jury to determine whether the contract for the delivery of the "Journal" was a *bona fide* subscription for the delivery of the newspaper or, as the defendants contended, was an effort to evade what in substance was a gambling contract, and therefore void under the Gaming act.

There was testimony in the case introduced in behalf of defendants tending to show that what the plaintiff at heart desired in the transaction was the automobile, and not the newspapers, but the jury found in her favor, from which we must conclude that the contract sued upon was as plaintiff alleges, the meritorious factor in the agreement, and that the prize involved in the baby contest was but an incident to the main contract.

The defendants insist that a nonsuit should have been directed upon the ground that the contract was a lottery, and that the plaintiff is in *pari delicto* and is *particeps criminis,* and cites as authority the cases of *State* v. *Shorts,* 3 *Vroom* 398, and *Wooden* v. *Shotwell,* 3 *Zab.* 465.

We think these cases are clearly distinguishable from the

case at bar. The case in Zabriskie, above cited, presented the question whether a drawing from a common pool of numbers representing lots of unequal value, but for which all the subscribers had paid equal sums, was within the terms of the Lottery act, and Chief Justice Green in the Supreme Court quite reasonably concluded that it was essentially a lottery. In the case in Vroom gifts were distributed among the audience, at a traveling show. The exhibitor called at will the numbers to which he desired to assign prizes, and the fortunate possessors of the numbers were awarded prizes, if the exhibitor in other respects approved of them.

These cases present apt illustrations of veritable games of chance which incur the condemnation of our act against lotteries.

The case of *Dion* v. *St. John's Baptiste Society (Maine Supreme Court)*, 82 *Me.* 319; 19 *Atl. Rep.* 825, exhibits features more akin to the case at bar than any to which we are referred; and the remarks of Chief Justice Peters descriptive of the scheme there involved are equally applicable to the scheme presented by this case, and relieve it of those culpable characteristics which it is the policy of the law to suppress.

But we are not obliged to differentiate this case from those adjudications where the manifest intent was to gamble in the interest of the parties to the illegal contract.

The case was quite properly left to the jury to determine whether the contract for the delivery of the newspapers was the essential consideration, and the superinducing cause of the contract, and they found that it was.

The fact that plaintiff possessed also under the same contract a right to vote for a third party in a contest must, under the jury's finding, be assumed to be but an incidental and an extraneous factor in the case, and cannot be held to excuse the defendants for non-performance of a specific agreement to deliver goods *in futuro.*

We think that the trial court properly charged the jury upon the nature of the contract, under the provisions of the Sales act, as a contract for the delivery of goods, not then in existence to be delivered. *Comp. Stat., p.* 4648.

We think the remaining objections urged by the defendants present questions of fact which the jury doubtless considered in reaching their verdict.

The judgment will be affirmed.

*For affirmance*—THE CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, VREDENBURGH, CONGDON, WHITE, HEPPENHEIMER, JJ.    12.

*For reversal*—None.